IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

JEROME MCROY,

Defendant.

CRIMINAL CASE NO.

1:16-CR-00437-CAP-JFK

## REPORT AND RECOMMENDATION

Pending before the court is Defendant Jerome McRoy's motion [Doc. 23] and supplemental motion [Doc. 37] to suppress evidence obtained from two cellular telephones seized from his person on February 4, 2016, resulting from a warrantless traffic stop and arrest.[1]  An evidentiary hearing was held on October 12, 2017, on Defendant's motions to suppress.[2]  [Doc. 54].  In his post-hearing brief in support of the motion to suppress, Defendant contends that the Government has failed to establish

---

[1]Also pending before the court is co-Defendant Camishia Robinson's motion [Doc. 27] to suppress evidence and statements which had been scheduled for an evidentiary hearing on October 12, 2017.  Counsel for Defendant moved [Doc. 50] for a continuance of the hearing due to the fact that on September 18, 2017, a bench warrant was issued for Defendant Robinson's arrest when she absconded from the Dismas House.  The court granted the motion.  [Doc. 52].  At this time, Defendant Robinson should be considered a fugitive.

[2]Citations to the transcript of the hearing are:  (Tr. at ).

probable cause sufficient to arrest anyone for the offense of Interstate Interference with Child Custody and that, even if the evidence establishes that an offense was committed, the Government has not established probable cause for his warrantless arrest resulting in the unlawful warrantless search of his person and seizure of the cellular telephones.  [Doc. 57].  In response, the Government contends that the initial traffic stop was lawful and that the officers had probable cause for Defendant's arrest such that he was lawfully searched incident to arrest.[3]  [Doc. 60].  In reply to the Government's arguments, Defendant correctly points out that the Government's arguments rely on the direct testimony of the only government witness which was clarified on cross-examination and otherwise are not supported by the record before this court.  [Doc. 26].

After consideration of the arguments, record before the court and relevant legal authorities, the court finds that Defendant's motions to suppress are due to be granted.

---

[3]Defendants' cellular telephones were subsequently searched pursuant to federal search warrants issued on March 3, 2016.  [Doc. 37-1, 37-2, 37-3, 37-4].

AO 72A
(Rev.8/82)

## I.      Background Facts

The only witness that testified at the evidentiary hearing was Taylor Dervish, a Special Agent with the Federal Bureau of Investigation ("FBI"),[4] who was not involved in the investigation resulting in Defendant McRoy's arrest but who was subsequently contacted by Detective ("Det.") Angie Clements with the College Park Police Department.  (Tr. at 3, 6-7).  Det. Clements contacted the agent after College Park law enforcement officers recovered a fifteen-year-old female juvenile ("R.O.") and arrested Defendants McRoy and Robinson.  (Tr. at 6).  Agent Dervish's testimony is based on the information provided by Det. Clements.  (Tr. at 6-8).

Det. Clements advised that she had received information from the Minneapolis Police Department that R.O. had traveled from Minnesota to Atlanta.  (Tr. at 7).  Sergeant ("Sgt.") Schmidt, Minneapolis Police Department, advised that R.O. was missing out of Minneapolis and that she, the sergeant, had located BACKPAGE.COM

---

[4]The agent, employed with the FBI since June 2014, is a member of the Violent Crimes Against Children Squad and works on investigations involving the sexual trafficking of juveniles.  (Tr. at 3-4).  The agent works with the Metro Atlanta Child Exploitation Task Force.  Members of the Task Force identify, locate and recover juvenile victims of sexual trafficking and then prosecute those exploiting the victims. (Tr. at 4-5).  As part of the Task Force, local law enforcement agencies contact the FBI to report the recovery of a juvenile victim and to coordinate the subsequent investigation and prosecution of the suspects.  (Tr. at 5-6).

3

advertisements featuring R.O. and an adult female, Defendant Robinson, providing a telephone number linked to Defendant Robinson.  (Tr. at 8-9).  Sgt. Schmidt contacted T-Mobile, the carrier for the telephone number, and requested that T-Mobile ping the telephone to allow it to be tracked as it traveled south from Minneapolis.  (Tr. at 8).  The telephone eventually was stationary in College Park, Georgia, at a Travelodge Hotel located on Old National Highway.   (Tr. at 8-9).   Sgt. Schmidt had the BACKPAGE.COM advertisements of R.O. and Defendant Robinson as well as another photograph of R.O.  (Tr. at 9).

The College Park police observed a mini-van with a Minnesota license plate registered to Defendant Robinson parked at the Travelodge Hotel.  (Tr. at 9-10).  The officers observed persons looking similar to Defendant Robinson and R.O. and a male exiting the hotel and entering the mini-van.  (Tr. at 10-11).  After the mini-van left the hotel parking lot, officers conducted a traffic stop of the vehicle.  (Tr. at 11).  They then identified the occupants as R.O. and Defendants McRoy and Robinson.  (Tr. at 11).  When Defendants McRoy and Robinson were arrested, for interference with child custody, cellular telephones were found on their persons and seized.[5]  (Tr. at 11, 19-

---

[5]Agent Dervish testified that, based on her training and experience, in the vast majority of cases involving traffickers in commercial sex acts for money, the suspects utilized BACKPAGE.COM to advertise and that cellular telephones were used to take

4

20).  No other testimony was provided regarding the circumstances surrounding the traffic stop or the arrest of Defendants McRoy and Robinson or any subsequent investigation conducted at the scene.[6]

In addition to the information about the events of February 4, 2016, Agent Dervish testified that Det. Clements also advised that she was aware of information regarding a trip to engage in prostitution to D.C. involving R.O. and allegedly Defendants Robinson and McRoy.  (Tr. at 16-17).  On cross-examination, however, the agent clarified that Det. Clements only advised that she was told by Sgt. Schmidt that Defendant Robinson and R.O. traveled to D.C. with "J" - no further description - and that was all the information the College Park police had on February 4, 2016.  (Tr. at 17-18).  When asked if, "[w]hen agents arrest Mr. McRoy on February 4, 2016, at that point in time the only information that Detective Clements had and College Park

_____

the photographs posted on the web page.  (Tr. at 13).

[6]In its response brief, the Government asserts that, after conducting the stop of the mini-van for the purpose of investigating Defendants for interference with custody or sex trafficking or both, "upon determining that neither the Defendant nor Robinson had lawful authority to take R.O. from her legal custodian or to harbor an absconding child, Defendant Clements charged them with Interference with Custody."  [Doc. 60 at 7].  The Government does not provide a citation to the record to support this statement for the good reason that no such citation exists.  [Id.].  The record is devoid of any evidentiary support for this assertion.

had is that there was a person who had gone on a trip in August 2015 with Ms. Robinson and R.O. by the name of 'J'", the agent answered, "That is correct, yes." (Tr. at 18). The agent also confirmed that all of the information that Det. Clements had about the trip from Minneapolis to Atlanta involved only Defendant Robinson and R.O. and that College Park law enforcement had no information at the time of Defendant McRoy's arrest that connected him to any act of prostitution. (Tr. at 18-19). Law enforcement, including in Minneapolis, had not identified Defendant McRoy as "J" at the time of his arrest and did not know about a third person traveling to Atlanta.[7] (Tr. at 19).

Defendants Robinson and McRoy are charged in the federal indictment, from on or about August 2015 through February 2016, with conspiring to knowingly and willfully recruit, entice, harbor, transport, provide, obtain, maintain, patronize and solicit by any means, in and affecting commerce, R.O., a minor under the age of

---

[7]The agent's testimony on cross-examination refutes her testimony on direct, relied on by the Government in its post-hearing brief [Doc. 60 at 2], that "[Sgt.] Schmidt . . . briefed [Det.] Clements . . . regarding the history of juvenile R.O., and that she had been involved in prostitution with Ms. Robinson and *Mr. McRoy* previously, and they had also taken her to Washington D.C. over the Summer of . . . 2015 for prostitution." (Tr. at 10) (emphasis added). The third party on the trip to D.C. was only known as "J", and, at the time Defendant was arrested on February 4, 2016, he had not been linked to "J". (Tr. at 18-19).

eighteen, recklessly disregarding that R.O. was not eighteen and would be caused to engage in commercial sex acts by means of force, threats, fraud and coercion, in violation of 18 U.S.C. § 1594(c).  [Doc. 1, Count One].  And Defendants are charged, during the same time frame, with knowingly and willfully recruiting, enticing, harboring, transporting, providing, obtaining, maintaining, patronizing and soliciting by any means, in and affecting commerce, R.O., a minor under the age of eighteen, recklessly disregarding that R.O. was not eighteen and would be caused to engage in commercial sex acts by means of force, threats, fraud and coercion, in violation of 18 U.S.C. §§ 1591(a)(1), (b)(1) and (b)(2).  [Id., Count Two].

Additional facts will be set forth as necessary in discussion of the motions to suppress.

## II.    Discussion

Defendant seeks to suppress the cellular telephones and the evidence obtained from execution of the federal search warrants for the telephones seized from his person as a result of a warrantless arrest and search on February 4, 2016.  He contends that the officers lacked probable cause for the stop of the vehicle in which he was riding and/or lacked probable cause for his subsequent arrest.  [Doc. 57].  The Government, in opposition, contends that there was reasonable suspicion to conduct the vehicle stop

and that there was probable cause for Defendant's arrest allowing for the seizure of the cellular telephones in a search incident to arrest.  [Doc. 60].

### a.   Traffic Stop, Detention/Arrest and Search

"A traffic stop, which 'is a seizure within the meaning of the Fourth Amendment,' . . . 'is constitutional if it is either based upon probable cause to believe a traffic violation has occurred or justified by reasonable suspicion in accordance with Terry[v. Ohio, 88 S. Ct. 1868 (1968)].'"  United States v. Spoerke, 568 F.3d 1236, 1248 (11th Cir. 2009) (citations omitted); United States v. Dixon, 491 Fed. Appx. 120, 122 (11th Cir. 2012) (same).  As the Eleventh Circuit Court of Appeals stated in United States v. Cooper, 133 F.3d 1394 (11th Cir. 1998), "law enforcement 'may stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles.'"  Id. at 1398 (quoting United States v. Strickland, 902 F.2d 937, 940 (11th Cir. 1990)); see also United States v. Terry, 220 Fed. Appx. 961, 963 (11th Cir. 2007) (same).  Additionally, "[l]aw enforcement officers may make an investigatory stop of a vehicle if they have a reasonable suspicion the occupants of the vehicle are engaged in criminal conduct"  United States v. Durrah, 384 Fed. Appx. 970, 971 (11th Cir. 2010) (citing United States v. Lopez-Garcia, 565 F.3d 1306, 1313 (11th Cir. 2009)

8

("It is by now well established that a 'law enforcement officer may conduct a brief investigative stop of a vehicle, analogous to a <u>Terry</u>-stop, if the seizure is justified by specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct.'") (citation omitted)).  Furthermore, pursuant to the decision in <u>Brendlin v. California</u>, 127 S. Ct. 2400 (2007), a passenger in a vehicle, such as Defendant McRoy, has a limited challenge to a warrantless vehicle stop and search of his person. In <u>Brendlin</u>, the Supreme Court held that a passenger in an automobile, stopped as the result of either a traffic offense or based on reasonable suspicion of criminal activity, is seized the same as the driver and may challenge the constitutionality of the stop. 127 S. Ct. at 2406-08, 2410.[8]  Thus, a passenger may challenge the recovery of any evidence off his person or statements made as a result of the stop.

Law enforcement officers may briefly detain individuals found in the vehicle for purposes of investigating a crime if they have a reasonable, articulable suspicion based on objective facts that individuals in the vehicle have engaged in, or are about to engage in, criminal activity.  <u>See</u> <u>United States v. Harris</u>, 526 F.3d 1334, 1337 (11th

---

[8]For this reason, law enforcement officers are not required to present individualized articulable suspicion for each occupant of a vehicle; the initial detention of all occupants "is justified by the fact that [the defendant] was a passenger in a vehicle lawfully detained under <u>Terry</u>." <u>United States v. Durrah</u>, 2009 WL 10688822, at *6 & n.5 (N.D. Ga. July 8, 2009).

Cir. 2008); United States v. Lindsey, 482 F.3d 1285, 1290 (11th Cir. 2007).  "[T]he 'reasonableness' standard requires that a police officer 'be able to point to specific and articulable facts, which, when taken together with rational inferences from those facts, reasonably warrant that intrusion.'"[9] United States v. Mikell, 102 F.3d 470, 474-75 (11th Cir. 1996) (citing Terry, 88 S. Ct. at 1880); see also United States v. Blackman, 66 F.3d 1572, 1576 (11th Cir. 1995) ("The reasonableness of the officers' conduct must be judged against an objective standard:  would the facts available to the officer at the moment of the seizure or search warrant a man of reasonable caution in the belief that the action taken was appropriate.") (citations and internal quotation marks omitted)).

At the time of the stop of Defendant Robinson's mini-van, the College Park police officers had a reasonable suspicion that, at least as to Defendant Robinson, she

---

[9]And those inferences are considered in light of the training and experience of the law enforcement officers conducting the investigation. See Lindsey, 482 F.3d at 1290-91 ("We also recognize that the police may 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'") (citation omitted); United States v. Smith, 201 F.3d 1317, 1323 (11th Cir. 2000) ("In deciding whether the detaining officers had reasonable suspicion, we look at the totality of the circumstances known to the detaining officers at the time of the detention[,]" which includes viewing all of the circumstances "in the light of the officers' special training and experience."); United States v. Diaz-Lizaraza, 981 F.2d 1216, 1221 (11th Cir. 1993) ("While none of these actions is criminal on its face, together they did provide the trained agents with reasonable suspicion" that the defendant was involved in criminal activity.).

10

had or was engaging in criminal conduct involving the juvenile R.O.  The court notes that, as is true with the subsequent probable cause discussion, it is not material whether the officers advised Defendants McRoy and Robinson of the nature of the charges for which they were being initially detained and subsequently arrested or incorrectly identified the offenses supporting the detention and arrests.  "Quite simply, '[t]he validity of an arrest does not turn on the offense announced by the officer at the time of the arrest.'"  Lee v. Ferraro, 284 F.3d 1188, 1195-96 (11th Cir. 2002) (quoting Bailey v. Bd. of County Comm'rs of Alachua County, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992)).  "Indeed, '[w]hen an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest.'"  Id. at 1196 (quoting United States v. Saunders, 476 F.2d 5, 7 (5th Cir. 1973)); see also United States v. Porter, 2016 WL 8674273, at *3 n.5 (S.D. Ga. December 23, 2016) ("an officer's subjective reason for making a stop need not be the criminal activity for which the objective facts furnish a reasonable suspicion[; i]n other words, if a police officer make a temporary detention on one basis, later determined to be insufficient, the stop may be upheld on another basis

11

shown by the facts known to the officer") (citation and internal quotation marks omitted).

Accordingly, while the court agrees with Defendant that, at the time of the stop of the vehicle, the record does not support a detention based on reasonable suspicion that Defendant Robinson had interfered with R.O.'s custody, see O.C.G.A. § 15-5-45(b)(1)(A); Thompson v. State, 245 Ga. App. 396, 537 S.E.2d 807 (2000),[10] the record does support a finding of reasonable suspicion that Defendant Robinson was potentially engaging in a number of other violations of state law, such as, pimping, see O.C.G.A. § 16-6-11; Creighton v. State, 327 Ga. App. 825, 828, 761 S.E.2d 373, 376 (2014),[11] or trafficking a person for sexual servitude, see O.C.G.A. § 16-5-46(c); Pepe-Frazier v. State, 331 Ga. App. 263, 264 n.2, 770 S.E.2d 654, 657 n.2 (2015),[12] enticing

---

[10]"[A] person commits the offense of interference with custody when, without lawful authority to do so, he knowingly or recklessly takes or entices a child away from the individual who has lawful custody of the child." Id. at 399, 537 Ga. App. at 808.

[11]Pimping is committed when a person "[a]ids or abets, counsels, or commands another in the commission of prostitution or aids or assists in prostitution where the proceeds or profits derived therefrom are to be divided on a pro rata basis." Id. (citation and internal quotation marks omitted).

[12]The offense is committed "when [a] person knowingly subjects another person to or maintains another person in sexual servitude or knowingly recruits, entices, harbors, transports, provides or obtains by any means another person for the purpose

AO 72A
(Rev.8/82)

a child for indecent purposes, <u>see</u> O.C.G.A. § 16-6-5(a); <u>Pepe-Frazier</u>, 331 Ga. App.

at 264 n.2, 770 S.E.2d at 657 n.2,[13] or contributing to the delinquency of a minor, <u>see</u>

O.C.G.A. § 16-12-1(b); <u>Pepe-Frazier</u>, 331 Ga. App. at 264 n.2, 770 S.E.2d at 657 n.2.[14]

The officers were aware that in August 2015, Defendant Robinson and R.O.,

with a third unidentified person known only as "J", had traveled to D.C. for the

purpose of engaging in prostitution.  (Tr. at 16-18).  They were also informed that R.O.

was a missing juvenile from Minneapolis and that there were advertisements in

BACKPAGE.COM, a site used to advertise for prostitution, featuring Defendant

Robinson and R.O., and linked to Defendant Robinson by her telephone number.  (Tr.

at 8-9, 13).   Defendant Robinson was tracked to College Park, Georgia, and the

Travelodge Hotel on Old National Highway, where her mini-van was located.  (Tr. at

7-10).  Officers subsequently observed R.O. and Defendant Robinson, accompanied

of sexual servitude."  <u>Id.</u> (citation and internal quotation marks omitted).

[13]This offense is committed when a person "solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts."  <u>Id.</u> (citation and internal quotation marks omitted).

[14]The offense of contributing to the delinquency of a minor occurs when a "person . . . [k]nowingly and willfully encourages, causes, abets, connives, or aids a minor in committing a delinquent act . . . ."  <u>Id.</u> (citation and internal quotation marks omitted).

13

by an unidentified male, leaving the hotel and entering the van. (Tr. at 10-11). As was true in August 2015, the officers could have reasonably concluded that Defendant Robinson was utilizing R.O. to engage in commercial sexual conduct making the initial stop of the mini-van justified under the Fourth Amendment.

The problem for the Government arises in determining whether, after Defendant McRoy's initial detention, the Government established probable cause for his arrest for any criminal offense. In <u>Craig v. Singletary</u>, 127 F.3d 1030 (11th Cir. 1997), the Eleventh Circuit Court of Appeals stated:

> Probable cause to arrest exists when the facts and circumstances within the collective knowledge of law enforcement officers, or of which they have reasonably trustworthy information, would cause a prudent person to believe that the suspect has committed or is committing an offense. . . . Because "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment" . . . "probable cause itself is a doctrine of reasonable probability and not certainty[.]"

<u>Id.</u> at 1042 (citations omitted); <u>see also</u> <u>Lindsey</u>, 482 F.3d at 1291 ("Probable cause to arrest exists when the totality of the facts and circumstances support 'a reasonable belief that the suspect had committed or was committing a crime.'") (citation omitted). Thus, "[s]ince a finding of probable cause requires only a probability of criminal activity . . . a court assessing probable cause in hindsight must assess both the totality

14

of the circumstances and the inferences that flow from those circumstances."[15] United States v. Wai-Keung, 845 F. Supp. 1548, 1557 (S.D. Fla. 1994), aff'd, 115 F.3d 874 (11th Cir. 1997) (citations omitted).  A law enforcement officer need not resolve all inferences and factual conflicts in favor of the suspect.  "An officer's decision to arrest a suspect may be objectively reasonable even though that officer has not specifically discarded every possible non-criminal explanation for the conduct that forms the basis for [the] decision to arrest a suspect."  Bailey, 956 F.2d at 1119 n.5.

As noted, once the traffic stop was initiated, the Government presented no further evidence of what transpired during the stop and initial detention of Defendants Robinson and McRoy and R.O. with the exception of testimony that cellular telephones were seized from the persons of both Defendants incident to their arrests. (Tr. at 11, 19-10).  The information provided to justify the traffic stop simply does not

---

[15]As true with an evaluation of whether there is reasonable suspicion to support a detention, "[i]n reviewing probable cause determinations, [a court] must consider the totality of the circumstances-including the officers' training and experience as well as their knowledge of the situation at hand."  United States v. Buchanan, 70 F.3d 818, 826 (5th Cir. 1996).  "[A] police officer may draw inferences based on his own training and experience in deciding whether probable cause exists . . . ."  United States v. Reeves, 604 Fed. Appx. 823, 827 (11th Cir. 2015).

15

support a finding of probable cause for Defendant McRoy's arrest.[16]  The evidence does not link him to the trip to D.C. - besides the very tangential fact that his first name "Jerome" begins with a "J" - or with any prostitution activities.  (Tr. at 17-18).  Defendant is not identified as being in Minneapolis, as having traveled with the women from Minneapolis to College Park, or as participating in placing the BACKPAGE.COM advertisements.  (Tr. at 18-19).  Besides being a fifteen-year-old female, there is no description of R.O. or her attire which might indicate that Defendant McRoy was aware of unlawful activity involving a minor.  (Tr. at 6).

As Agent Dervish testified, all of the information that Det. Clements had about the trip from Minneapolis to Atlanta involved only Defendant Robinson and R.O. and College Park law enforcement had no information at the time of Defendant McRoy's arrest that connected him to any act of prostitution.  (Tr. at 18-19).  Law enforcement, including in Minneapolis, had not identified Defendant McRoy as "J" at the time of his

---

[16]In addition to the various state offenses outlined *supra*, the facts likewise do not establish probable cause to arrest Defendant for violations of 18 U.S.C. § 1951, *et seq.*, as charged in the federal indictment.  See United States v. Mozie, 752 F.3d 1271, 1286 (11th Cir. 2014) ("to convict [the defendant] on the substantive counts . . . underlying the conspiracy, the government had to prove three elements: (1) he knowingly recruited, enticed, harbored, transported, provided, obtained or maintained by any means each victim; (2) he knew, or recklessly disregarded the fact, that each victim was a minor and would be caused to engage in a commercial sex act; and (3) his acts were in or affected interstate or foreign commerce").

arrest and did not know about a third person traveling to Atlanta. (Tr. at 19). Based on the evidence before the court, the officers lacked probable cause to arrest Defendant for criminal conduct associated with the juvenile R.O. See United States v. Sampson, 99 F. Supp. 3d 1352, 1357 (M.D. Fla. 2015) ("the substance of all the definitions of probable cause is reasonable ground for belief of guilt . . . [which] must be *particularized* with respect to the person to be searched or seized") (citation and internal quotation marks omitted; emphasis added); accord Holmes v. Kucynda, 321 F.3d 1069, 1081 (11th Cir. 2003) ("This circuit's case law has clearly established that '[m]ere presence at the scene of a crime, without more, does not support a finding of probable cause to arrest.'") (citation omitted; and citing, *inter alia*, Ybarra v. Illinois, 100 S. Ct. 338, 342 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to [arrest] that person.")).

Accordingly, the court finds that the officers lacked probable cause to arrest Defendant prior to any pat down of his person and seizure of the cellular telephones.[17]

---

[17]A search of a defendant's person or the area within his immediate vicinity following his arrest and the seizure of any items from his person or within the area surrounding him as the result of a search incident to lawful arrest is one exception to the warrant requirement. See United States v. Robinson, 94 S. Ct. 467 (1973); Chimel v. California, 89 S. Ct. 2034, 2040 (1969).

17

The record also does not support a search of Defendant's person and seizure of the cellular telephones on any other grounds.[18]   For these reasons, the court finds that Defendant's Fourth Amendment rights were violated by his arrest and the subsequent search of his person and the seizure of his cellular telephones.  Defendant, therefore, seeks suppression of the cellular telephones and the evidence obtained from the subsequent search of the telephones.  [Doc. 57].

---

[18]The Government makes a somewhat convoluted argument that the search of Defendant's person was for officer safety or based on "exigent circumstances." [Doc. 60 at 7-8].  "During a lawful traffic stop, officers . . . may take steps that are reasonably necessary to protect their personal safety . . . , including requiring the driver and passengers to exit the vehicle 'as a matter of course.'"  Spoerke, 568 F.3d at 1248 (citations omitted).  However, "[t]o justify a patdown of the driver or a passenger during a traffic stop, . . . the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." Arizona v. Johnson, 129 S. Ct. 781, 784 (2009); and see United States v. Smith, 481 Fed. Appx. 540, 543 (11th Cir. 2012) ("Moreover, in connection with a traffic stop, an officer may conduct a pat down search if he has reason to believe that his own safety or the safety of others is at risk."). Because there is no evidence in the record of the events occurring during the traffic stop, the Government has not established a basis for a pat down or frisk of Defendant in conjunction with conducting the stop.   And the Government's "exigent circumstances" argument is grounded on a finding that there is probable cause to believe Defendant was engaging in or had engaged in criminal activity such that a warrantless search of his person and seizure - not of weapons - of his cellular telephones was reasonable to preserve evidence of criminal activity. [Doc. 60 at 8-9]. The record does not support an exigency exception in this case.

18

**b.     Exclusionary Rule**

"Under the exclusionary rule, evidence obtained in an encounter that is in violation of the Fourth Amendment, including the direct products of police misconduct and evidence derived from the illegal conduct, or 'fruit of the poisonous tree,' cannot be used in a criminal trial against the victim of the illegal search and seizure." United States v. Perkins, 348 F.3d 965, 969 (11th Cir. 2003); and see Utah v. Strieff, 136 S. Ct. 2056, 2061 (2016) (same).  "The government bears the burden of demonstrating that evidence was not obtained as a direct result of the illegal search. . . . The relevant inquiry examines the extent of the causal connection between the lawless police conduct and the evidence in question; i.e., whether, granting the establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." United States v. Timmann, 741 F.3d 1170, 1182 (11th Cir. 2013) (citations and internal quotation marks omitted); and see United States v. Bergin, 732 F. Supp. 2d 1235, 1241 (M.D. Fla. 2010) (same).  The Supreme Court deems the exclusionary rule "'applicable only . . . where its deterrence benefits[, i.e., to deter future unlawful police conduct,] outweigh its substantial social costs.'" Strieff, 136 S. Ct. at 2061 (citation omitted); and see Bergin, 732 F. Supp. 2d at 1242.

19

For this reason, the Court recognizes three exceptions to the exclusionary rule: independent source doctrine, inevitable discovery doctrine and attenuation doctrine. Strieff, 136 S. Ct. at 2061.[19]  The Government has not demonstrated that any of the exceptions apply in this case.

As the evidence before the court establishes, College Park police officers - based on the information provided to them - conducted a traffic stop of Defendant Robinson's mini-van.  (Tr. at 7-11).  During the traffic stop, resulting in the warrantless arrest of Defendant without probable cause, two cellular telephones were seized from his person.  (Tr. at 11, 19-20).  Apparently, but for the traffic stop, Defendant would not have been detained and arrested, his person would not have been searched and the cellular telephones would not have been seized.  If the police had not seized the cellular telephones from Defendant's person which were arguably linked to criminal activity involving the juvenile R.O., the search warrants would not have been

---

[19]"[T]he independent source doctrine allows trial courts to admit evidence obtained in an unlawful search if officers independently acquired it from a separate, independent source. . .  [T]he inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source. . . . [T]he attenuation doctrine [provides that e]vidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained."  Id. (citations and internal quotation marks omitted).

obtained.  The Government presented no other basis for seeking the federal search warrants to examine the contents of the telephones.  "The exclusionary rule extends to items seized pursuant to a warrant when information included in the affidavit offered in support of the warrant was obtained as a result of an unlawful search."  United States v. Parker, 600 F. Supp. 2d 1251, 1257 (M.D. Fla. 2009); and see United States v. Hill, 795 F. Supp. 2d 1304, 1320-21 (M.D. Fla. 2011) (because the entry into the premises was illegal and the evidence used for the later search warrant was based on that illegal entry, the evidence obtained as a result of execution of the warrant was suppressed); accord Sampson, 99 F. Supp. 3d at 1354-55, 1359 (finding that the officers lacked probable cause to arrest the defendant as a result of a traffic stop, the court held that the search incident to arrest "contravened the Fourth Amendment and the fruits of that search . . . must be suppressed").

For these reasons, the court finds that the cellular telephones found on Defendant's person following his unlawful arrest and the contents of those telephones subsequently seized should be suppressed as having been obtained in violation of Defendant's Fourth Amendment rights.

21

## III.    Conclusion

Based on the foregoing cited authority and for the reasons stated, the court **RECOMMENDS** that Defendant's motion [Doc. 23] and supplemental motion [Doc. 37] to suppress be **GRANTED**.[20]

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case as to Defendant McRoy.[21]

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, declared Ready for Trial.

**SO ORDERED AND RECOMMENDED** this 22nd day of January, 2018.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

---

[20]The court notes that, although Defendant initially challenged the probable cause set forth in the affidavits in support of the search warrants [Doc. 37] raising a potential argument under Franks, he has abandoned that claim and has preceded only on the grounds set forth *supra*.

[21]As noted, see ftnt. 1, Defendant Robinson is a fugitive.

22